AUSTIN, Executor of NELSON *against* NELSON.

A statute was passed on the 9th of March, 1797, which declared, that no action should be removed from any of the courts of Common Pleas to the Supreme Court by *habeas corpus*, after plea pleaded, a plea in bar excepted; *held*, that where a *habeas corpus* was presented on the 10th of March, after the general issue pleaded and the cause removed, a *procedendo* should issue.

This was an action of *trover*, which had been commenced in the Common Pleas of Salem county : to which defendant pleaded *non cul*. A *habeas corpus* had been offered by the defendant, and allowed by the court on the 10th of March last; and the causes being accordingly removed into this court, a motion was now made by *Leake*, for the plaintiff, for a *procedendo*.

*Leake*, for the motion. The act of March 9, 1797, (*Pamph. Laws* 228*) in the sixth section, explicitly enacts, that " no action shall be removed from any of the courts of Common Pleas to the Supreme Court, by a writ of *habeas corpus*, after a plea has been filed in such action, a plea in bar excepted." The only question, then, is, whether this case is embraced within the statute. The law is dated March 9th, the *habeas corpus* was allowed on the 10th of the same month. Under the English law, a statute is considered as in force from the first day of the session at which it is passed. 6 *Bac. Abr.* 370. In New Jersey, a particular date is attached to every law, and it is considered as binding from that time.

The meaning of the legislature here is perfectly apparent, and the maxim, *nulla expositio contra verba fienda est*, is the only rule that it is necessary to keep in view. 2 *Black. Com.* 379. When an act is conceived in clear and express

---

* Repealed March 16, 1798, *Pamph. Laws* 407.

terms; when the sense is manifest, and leads to nothing absurd, it is unreasonable to refuse the sense which it naturally presents. It is not permitted to interpret what has no need of interpretation. *Vattel* 216, *sec.* 263. Lord Mansfield, in *Eldridge* v. *Knott, Cowp.* 215, held that the statute of limitations was so positive a bar that it operated conclusively, although both court and jury were satisfied of the justness of the claim. The term *plea in bar*, has received a precise and definite meaning in acts of the legislature, and it would be manifestly improper to refer to the books of practice in the courts of England, in order to find a meaning of a term the signification of which is clear and unambiguous. By the fifth section of the practice act of August 30, 1784, the legislature call a plea in bar "a plea that the action is illegal." This is, strictly speaking, a plea in abatement, but it shews the signification which the legislature has attached to the expression.

*L. H. Stockton* and *R. Stockton*, contra.—1. Acts of assembly do not go into operation in this state until they are publicly promulgated. Here the act was passed on the ninth of March, at Trenton, and the cause was removed on the succeeding day, at Salem. The same principle which has induced our courts heretofore to contravene the established English law, which renders statutes operative from the commencement of the session of parliament during which they are passed, requires that they should not be regarded as binding until they have been published. It is equally unjust, equally hostile to the fundamental principles of our government, to compel an indvidual to conform his conduct to a law of which he could not be cognizant, as to one which was not in existence at the time that he acted.

2. At any rate, it is conceived that this law, if extended by construction to this case, is *ex post facto*, and therefore unconstitutional. The right to remove his cause was a vested right, belonging to every party in a suit, and it could

not legally be taken from him. If such a law is considered as extending only to suits which should be afterwards commenced, it could not operate unjustly, but would be in every respect unobjectionable. When, however, it operates upon actions already pending, its tendency is to deprive the party of a fixed and vested right, one in the contemplation of the parties originally, and it is therefore retroactive.

3. This case comes, however, within the exception. A plea in bar had actually been filed. It is now said, that the legislature meant a plea in abatement. They have, however, used a term of settled and technical meeeting; they have employed an artificial expression, and the presumption is, they knew what meaning it conveyed. The former act, which has been referred to, even if allowed to supply a meaning, can scarcely answer the purpose, the expression is, " a plea in bar that the action is illegal." The legislature cannot be understood to mean, that this is the only matter that can be pleaded in bar to an action: they have been mistaken in styling a plea of this description a plea in bar, but they never intended to imply, that every plea in bar went to the legality of the action.

*Per Curiam.* In England, we take the law to be settled, that a statute operates from the first day of the session during which it is enacted, (*Latless* v. *Holmes,* 4 *Term Rep.* 660) and we do not know that any other rule has ever been adopted in this state. Even in criminal cases this doctrine has been uniformly adopted in that country, and in a case highly penal, before this court, considerable anxiety was felt, whether we were authorized to adopt another rule. The difficulty, however, was avoided by the verdict of the jury, which rendered its decision unnecessary. In the present case, however, the question does not arise; here the act was passed before the cause was removed, and we think the case embraced by the statute. The doctrine of a statute's taking effect from its promulgation, arose during

those ignorant ages when the custom prevailed of reading all the statutes publicly, by the sheriff, but it has long been exploded, and we cannot re-adopt it.

Does this case, then, come within the exception? We think not. If the term *plea in bar* is to receive the construction given to it in the books of English practice, the effect of the act will be nearly destroyed, and the proviso will be nearly as extensive as the prohibition. The term, however, has received a definite and precise meaning from the legislature; the statutes in which it is used are *in pari materia*, and we must presume that the same words were intended to convey the same meaning.* We are therefore of opinion, that the present cause was improperly removed into this court, and that a *precedendo* must issue.

*Precedendo* awarded.

[MAY TERM, 1797.]

---

* See 6 *Bac. Abr.* 379. Words and phrases, the meaning of which in a statute has been ascertained, are, when used in a subsequent statute, to be understood in the same sense.